Road Improvement District No. 1 of Grant County v. Toler.

Opinion delivered October 1, 1917.

1. Improvement districts—special act—powers and duties of commissioners.—Commissioners of an improvement district created by special act have only such powers, and can discharge only such duties as are given by the express terms of the act, or which are necessarily to be implied from its provisions.

2.  IMPROVEMENT DISTRICT—ROADS—CHANGE IN PLANS—WOODEN AND
    STEEL BRIDGES.—Under Act No. 48, p. 136, Acts of 1915, creating
    a road improvement district, the commissioners adopted a plan
    for wooden bridges in the district; *held,* the commissioners had
    the discretion to change the character of the bridges to steel and
    concrete, subject to the approval of the county court.

3.  IMPROVEMENT DISTRICTS—CHANGE OF PLAN— REASSESSMENT—
    ROADS.—The commissioners, acting under Act 48, p. 136, Acts
    1915, adopted a plan providing for wooden bridges in the dis-
    trict.  *Held,* under the act that they had the authority to change
    the plan from wooden to steel and concrete bridges, and to re-
    quire the assessors to so revise their assessment as to take into
    account the increased value of the property resulting from the
    changes made.

4.  IMPROVEMENT DISTRICT—INVALID ASSESSMENT.—A reassessment
    of benefits not based upon the benefits due to the superior quality
    of the improvement made, may be defeated upon a showing to
    that effect.

5.  IMPROVEMENT DISTRICTS—CHANGE IN PLAN.—The commissioners
    have no power to create a condition, of their own volition, making
    an assessment necessary, regardless of the necessity for the
    change.  Commissioners can make only such changes in the as-
    sessments as are required to make the assessment on any partic-
    ular piece of land conform to the benefits received by that piece
    of land.

6.  IMPROVEMENT DISTRICTS—COST OF THE IMPROVEMENT.—The cost of
    the improvement shall never exceed the benfit to be derived by
    the properties upon which the cost is imposed.

Appeal from Grant Chancery Court, *J. P. Hender-
son,* Chancellor; reversed.

*Waddell & Nall* and *Rose Hemingway, Cantrell,
Loughborough & Miles,* for appellant.

1.  The reassessment was properly made.  121 Ark.
110.

2.  The notice of assessment was sufficient.  Act
1915, p. 143, § 10; 103 Ark. 462-3.

3.  The presumption is in favor of the assessment.
The assessment of benefits is presumed to be correct and ·
the burden is upon the plaintiffs to set it aside.  80 Ark.
462; 84 *Id.* 262; 91 *Id.* 381; 99 *Id.* 523; 199 U. S. 203.

4. A reassessment was properly ordered. Acts 1915, p. 144.

5. The board had the right to substitute steel and concrete bridges for wooden ones and the assessments were properly raised. 55 Ark. 154; 90 *Id.* 37; 97 *Id.* 339; 105 *Id.* 68. The widest discretion is granted by the act. Act. 308, Acts 1917; Acts 1915, p. 39, etc.; 97 Ark. 339.

*Mehaffy, Reid & Mehaffy,* for appellee.

1. Deviations from and additions to the original plans were unauthorized and void. 52 N. E. 479; 70 *Id.* 801; 64 N. W. 581; Acts 1915, p. 141; 50 Ark. 116; 26 So. 70; Black Int. Laws 115-119, 282-3; Cooley Taxation, p. 419; 61 N. W. 1112.

2. The assessment for additional improvement was void. 62 Atl. 173.

3. Reassessment of benefits under original plan void even if authority existed. 125 Ark. 572; 119 Ark. 196; 83 *Id.* 54; 86 *Id.* 1. There must be a proportionate increase of benefits. 68 Ark. 376; 60 Ill. 19; 48 N. E. 155; 109 *Id.* 823; 69 So. 486; 147 N. W. 808, and others.

SMITH, J. This cause was heard upon an agreed statement of facts, the material portions of which are as follows: Road District No. 1 of Grant County, was created by Act No. 48 of the Acts of 1915, p. 136, and soon after its passage, the commissioners therein named met, organized and formed the necessary plans for the construction of the improvement contemplated in said act, and after deciding to make the improvement, they appointed the assessors, and after furnishing them the estimated cost of said improvement, caused said assessors to make the required assessment of benefits to accrue to the several pieces of property within the district provided for in said act. The estimated cost was fixed at about $163,000, to cover the cost of construction and incidental expenses, and upon this basis the benefits were fixed at $319,324, upon which bonds were issued amounting to $175,000, and sold for approximately $163,000 cash. In 1917 the commissioners ordered the assessors to reassess

said lands, and the assessors met and adjusted some assessments of individuals and also raised the entire assessment, making about $64,000 additional increase. This assessment was turned over to the chairman of the board, who gave the notice thereof, the sufficiency of which was questioned in the court below but which does not appear to be questioned here.

The benefits first assessed against said lands amounted to $319,324, and bonds were issued, which, with the interest thereon, will amount to approximately $300,000. The original estimate of the cost of the construction of the road prior to the letting of the contract, and upon which the first assessment of benefits was based, was $148,000. The contract was let upon unit prices, so much for each item, and totaled $150,555.43, based upon the estimated quantities. The plans were subsequently changed to provide for steel and concrete bridges, in place of wooden bridges, at an increased cost of $25,700. The amount of earth taken exceeded the original estimate $4,652. The cost of gravel was reduced $8,614, and the cost of culverts greater by $600. The original contract for the road complete was let for $154,-749, but this contract was for wooden bridges, and not for steel and concrete. The amount paid or to be paid for all engineering charges is 5 per cent. of the cost of construction, or about $8,250, and about $3,000 have been spent in court costs and attorney's fees in suits brought against the district and $2,500 have been paid for demurrage on cars of gravel. The benefits as originally assessed amounted to about $2.65 per acre, and the reassessment will make this average $3.20.

The actual cost of the steel bridges, as constructed, in place of wooden bridges, as originally specified, was $39,200.80. The construction of the road has already cost $156,778.76, and, when completed, will cost approximately $165,150, exclusive of engineering, legal and contingent expenses.

An additional agreed statement of facts was entered into, in which it was recited that the assessors assessed

the benefits of the lands in said district in 1915, upon which taxes have been collected for two years, and on said lands bonds have been issued in the sum of $175,000. "That in 1917, the said commissioners ordered the assessors to reassess said lands, and the assessors did meet and adjusted some assessments of individuals, and raised the entire assessment, making about $64,000 additional. * * * It is also agreed that bonds issued in the sum of $175,000 run for twenty years, at 6 per cent. interest per annum, and that the total benefits first assessed against said land equal about $319,000, and that the bonds as issued, together with the interest thereon, will equal approximately $300,000."

Appellee sought, and obtained, an injunction against the increased assessments, and this appeal has been prosecuted to review that action of the court below.

A number of questions are discussed in the briefs, but they are all answered when we answer the questions asked by one of the appellees in his brief. These questions are:

"One. Does Act No. 48, of 1915, provide specifically for a reassessment of additional benefits in any sum for any purpose, after the first general assessment has been made and bonds thereon have been issued and sold?

"Two. Is the said reassessment based upon benefits due to the superior quality of the improvements made or is it not for the purpose of raising money to supply deficiencies caused from bad management in the course of construction and maintenance of said road?

"Three. Is it not true that if said commissioners have power to make the present attempted reassessment, they could create a condition at their own volition, any time, for another assessment regardless of actual necessity for it?

"Four. Would not the attempted reassessment be confiscatory if same exceeds the benefits to properties in the district?"

It is apparent that the first question is at once the important one and the difficult one.

(1)   This is a proceeding under a special act which gives the commissioners there constituted certain powers and imposes upon them certain duties.  Necessarily, said commissioners have only such powers as are there granted, and can discharge only such duties as are there enjoined by the express terms of the act, or by necessary implication from its provisions.  The Legislature might have prescribed the plans for this improvement, and, had it done so, no discretion would have abided in the commissioners.  These plans could have been executed, and no other.  A wide discretion, however, was vested in the commissioners, subject only to the approval of the county court of Grant County, and we must assume, in the absence of any stipulation to the contrary, that this approval has been duly obtained.  Section 2 of the act recites that the district is organized for the purpose of improving that part of the Pine Bluff, Sheridan and Hot Springs road, lying in Grant County.  The terminii of the road in Grant County are fixed, and also its approximate course and direction.  It is then provided in section 2 that "said highway is to be constructed of macadam or of such other material as the commissioners may deem best, and they are authorized to build such bridges and culverts as they may find desirable.  Any bridges built shall be built as approved by the said county court."

Section 10 of the act provides that "The said assessors shall make their assessment at such times as they may be directed to do so by the board of commissioners, and shall place in the hands of the president of the board of commissioners their report of said assessment, thereupon the president of the board shall cause a notice to be published   *   *   *; that, after said notice shall have been given, the assessors shall meet at the place named in said notice on the day mentioned therein, and shall hear any complaint of landowners and persons interested and adjust any errors or wrongful assessment and their assessments as adjusted shall be the assessment of said road improvement district until the next assessment shall have been ordered by the board of commissioners."

It is provided in section 11 of the act that ''The commissioners may require the assessors to revise their assessment not oftener than once per annum, increasing or diminishing the assessment against particular pieces of property as justice requires; *provided,* that the total amount of benefits shall not be diminished if the district shall have borrowed money or incurred indebtedness. Notice of the revised assessment shall be given, as in case of the original assessment, and it shall be equalized in the same manner.''

It is provided in the act that the commissioners shall make their plans, and submit them to the county court for its approval, and, when this approval has been obtained, that they shall cause the assessors to assess the benefits.

(2) It must necessarily be true that the making and approval of the plans must precede the assessment of benefits, because the assessors must have in mind the improvement which the property owners will get when the improvement has been constructed. Plans were made, and were approved, and benefits assessed, and a portion thereof collected, before the improvement was entirely completed. Before its completion the commissioners decided to change the plans of the uncompleted part, calling for wooden bridges, to concrete and steel bridges, and we think they had the right so to do. Certainly, in the first instance, the commissioners could have adopted plans calling for concrete and steel bridges, rather than for wooden ones. The act unquestionably gave them this discretion, subject, of course, to the approval of the county court. They adopted one kind, and changed to another, but they made this change before the execution of their first plan.

(3) We do not have here the question of the right of commissioners to execute one plan, and to thereafter enter upon the execution of another plan. Once their plans had been executed, their power has been exhausted. But we see nothing in the act which is designed or intended to require the commissioners to execute, without change, a plan once adopted. Indeed, as we construe the

act, the legislative intent is against this construction. The right and duty of the commissioners to require the assessors to change and revise their assessments contemplates the possibility of changes in the plan which will work a change in the betterments received by the individual land owners. To hold otherwise would be to deprive the commissioners of any benefit derived from the experience obtained by them in the prosecution of their duties. The wisdom of the change is not questioned, and we are concerned only with the question of authority. It must necessarily be true that the more permanent the improvement, the greater the benefit to be derived from its construction, and it is a matter of common knowledge that steel and concrete bridges will be more durable than wooden bridges, and if this is true, greater benefits will be derived from the construction of the more durable improvement than would be derived from the one less durable. Before these bridges were constructed, the plan for their construction was changed, and the assessment here questioned was made after this revision of the plans, and having changed these plans, it was right and proper that the commissioners should, pursuant to the portion of section 11 quoted above, require the assessors to so revise their assessment as to take into account the increased value of the property resulting from the changes made. The act provides for appeals on the part of property owners who are dissatisfied with the assessment of their benefits, and we must assume, under the state of the record here, that these benefits were properly assessed if the authority for making the change exists in the act.

(4)    Question Two asked by appellee is one which was properly cognizable by the assessors in making the assessment. If said reassessment was not, in fact, based upon the benefits due to the superior quality of the improvements made, the assessment could have been defeated upon a showing to that effect without reference to the question of the authority of the commissioners to order the reassessment made.

(5)   In answer to the third question, it may be said that the commissioners have no power to create a condition, of their own volition, at any time, which makes an assessment necessary, regardless of the necessity for it.   They can only make such changes in the assessments as are required to make the assessment on any particular piece of land conform to the benefits received by that piece of land.

(6)   As an abstract proposition of law, the fourth question must be answered in the affirmative, for there is written into all proceedings of this character the limitation that the cost of the improvement shall never exceed the benefit to be derived by the properties upon which that cost is imposed.   But the question asked is an abstract one as applied to the facts of this record.   The assessors have found, and have reported, that the change of plans will result in an increased betterment to the property and in a sum which exceeds by a very safe margin the total cost of the improvement when made in conformity with the altered plans.

It follows, from what we have said, that the commissioners had the authority to make the change in the plans which they have made, and to direct the assessors to make an assessment conforming thereto and that there are betterments assessed which exceed the cost of the improvements, and it follows, therefore, that the court below should not have granted the injunction prayed for restraining the change made in the plans of the assessment.

The decree of the court below to that effect is, therefore, reversed and the cause will be remanded to the court below with directions to dissolve the injunction.

Hart, J., dissents.