PIERCE v. DRAINAGE DISTRICT No. 17.

Opinion delivered October 2, 1922.

1. DRAINS—ENFORCEMENT OF TAX AGAINST LAND OF UNITED STATES.— It is no defense in a suit to enforce a drainage tax against lands that the lands belonged to the United States at the time the assesment was made, where Congress, by act of Jan. 17, 1920, expressly consented to the assessment of such lands for drainage purposes.

2. DRAINS—ASSESSMENTS—TIME ALLOWED FOR ATTACKING.—Where no objections were made to drainage assessments made under Acts 1917, No. 103, and 1920, No. 305, within the time and in the manner provided by such acts, the validity thereof cannot be questioned in the drainage district's action to enforce the collection of the drainage taxes.

Appeal from Mississippi Chancery Court, Chickasawba District; *Archer Wheatley*, Chancellor; affirmed.

*Arthur T. Brewster,* for appellant.

The said special assessments are null and void and non-enforceable for the reason that they are not uniform and equal. Sec. 5. art. 16, Const. of Arkansas; 48 Ark. 382; 239 U. S. 234; 151 Mo. App. 561; 201 Mo. 482; 260 Mo. 679; 4 Wheat. 581.

The order of the county court should be set aside for the reason that said report was confirmed without exceptions by the fraudulent representations of the board of directors. C. & M. Dig., sec. 6290; 3 Ann. Cas. 565; 86 Fed. 200; 138 Fed. 223; 107 Fed. 305; 210 U. S. 385; 207 U. S. 127.

A chancery court has jurisdiction to grant relief against a judgment at law. 33 Ark. 455; 97 Ark. 314; 110 Ark. 79.

A court of equity has power to set aside a judgment for fraud practiced by the successful party in obtaining the judgment. C. & M. Dig., sec. 6290.

The assessment charged against the lands is absolutely null, void and ineffective for the following reasons: (1) said special act 103 is in conflict with and in contravention of § 5, article 10, of the Constitution of Arkansas; (2) is in conflict with and in violation of § 10 of article 1 of the Constitution of the United States; (3) is in conflict with and in violation of the Act of Admission, approved June 16, 1836, the "Compact" approved June 23, 1836, and the "Ordinance and Acceptance of Compact," approved October 18, 1836; (4) is in conflict with § 3 of article 4 of the Constitution of the United States. Act of Admission, p. 199, C. & M. Dig.; Compact, p. 200, C. & M. Dig.; Ordinance and Acceptance of Compact, p. 202, C. & M. Dig., 96 U. S. 107.

The State of Arkansas had no authority to pass an act seeking to impose taxes on Government property. Compact, p. 200, C. & M. Dig.; 186 U. S. 206; 16 Wall. 603; 22 Wall. 444; 179 U. S. 222; 95 U. S. 259; 115 U. S. 600; 133 U. S. 496; 9 Wall. 23; 117 U. S. 151; 243 U. S. 404; 43 Ark. 203.

*Davis & Costen* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

Appellant was barred from objecting to the assessment. Kirby's Digest, § 5685; 98 Ark. 544.

The Legislature may determine the amount of benefits or it may empower a board to act for it, and it is only an arbitrary determination in this respect that the courts will review. 133 Ark. 125; 83 Ark. 344; 98 Ark. 113; 98 Ark. 543.

The testimony fails to show that no benefits are derived from the construction of the improvement. 134 Ark. 14.

The fact that benefits have not been fully realized affords no avenue of escape from payment of the cost of the improvement. 100 Ark. 366; 140 S. W. 585; 123 Iowa 427; 1 L. R. A. (N. S.) 431.

No relief can be given against a judgment on account of irregularity in obtaining it unless the party shows a meritorious defense. 50 Ark. 458; 33 Ark. 778; 51 Ark. 344; 52 Ark. 81; 54 Ark. 3; 55 Ark. 103; 56 Ark. 546; 57 Ark. 354; 57 Ark. 603; 61 Ark. 647; 72 Ark. 106; 74 Ark. 296; 75 Ark. 425; 84 Ark. 532; 86 Ark. 597; 94 Ark. 350; 101 Ark. 145; 104 Ark. 458; 123 Ark. 448; 136 Ark. 551; 137 Ark. 462; 140 Ark. 447; 143 Ark. 551; 145 Ark. 298.

SMITH, J. This suit was brought to enforce the collection of certain delinquent drainage taxes. The delinquent landowners answered and attacked the validity both of the district itself and the assessments levied by it. There was a decree in favor of the district, and the landowners have appealed. The district was created by act 103 of the Acts of 1917 (page 485), and many of the objections to the act itself have been so frequently considered by this court, and decided adversely to the contentions of appellants, that we will not again review them.

So far as the assessments themselves are concerned, there are three grounds of attack: First, that the lands were not subject to taxation for drainage purposes;

second, that the assessments were not authorized by the act itself; and third, that the assessments were fraudulently made.

The district was organized to drain a large area in Mississippi and Poinsett counties, and included within the boundaries of the district were about 17,000 acres of unsurveyed land the title to which was in dispute at the time of the passage of the act creating the drainage district. Subsequently the title to this land was adjudged to be in the United States.

The Congress, on January 17, 1920, passed an act entitled "An act authorizing local drainage districts to drain certain public lands in the State of Arkansas, counties of Mississippi and Poinsett, and subjecting said lands to taxation." 41 U. S. Statutes at Large, part 1, chap. 47, p. 392. This act provided that all of the unentered, unreserved public lands, and all of the public lands for which no final certificates had been issued, within the area described by the act, should be subject to the laws of Arkansas relating to the organization of drainage districts. The appellants are owners of the lands therein referred to, and insist that the lands are not taxable for the reason that the title to the lands was in the United States Government when the drainage district was organized.

A complete answer to this objection appears to be that the Federal Government, through the Congress, has expressly consented that the lands be taxed for drainage purposes; and we see no reason why the Federal Government might not, at its own election, assume the ordinary duties of proprietorship. It stands admitted that no lands in the district had greater need of drainage than these government lands. The fact that they were unsurveyed and were located principally within the meander lines of what the original government surveys showed to be lakes would indicate an even greater necessity for drainage. It is also one of the undisputed facts in the case that the necessity for a drainage district was emphasized and made urgent by the fact that drainage dis-

tricts in the State of Missouri had been organized which would have used a large part of the area of the Arkansas district for outlet purposes.

It is very earnestly insisted that appellants' lands were not included in the original assessments of benefits for the reason that at the time those assessments were made the Congress had not consented to the assessment of the government lands lying within the district, and that the drainage act conferred no authority for the assessment of these lands, which was made after the act of Congress was passed.

It appears, however, that after the passage of the act of Congress, the General Assembly of this State, on February 23, 1920, passed an act, No. 305, providing for a modification of the plans of the district and for a reassessment of benefits. The provisions of this last act, which will not be set out, as they are similar to numerous other acts which have been upheld by this court, appear to be sufficiently comprehensive to answer the objection that no authority existed for the assessment of appellants' lands.

Pursuant to act 305 an assessment of appellants' lands was made, the plans of the district having been altered to afford those lands better drainage than the original plans promised. A voluminous record was made in the court below on that assessment, which was attacked on the grounds, among others, that proper notice was not given of the change of plans and the assessment conforming thereto; that the assessments of appellants' lands were arbitrary, discriminatory and confiscatory; and that the confirmation thereof was procured by fraud.

Upon this issue the court, in its opinion, made a finding of fact which we think is not clearly against the preponderance of the evidence, as follows:

"The defendants contend, and several of them testify, that a hearing on the assessments was advertised for a certain day, that they appeared in the county court at that time, and that Mr. Crigger, one of the commissioners,

was present and said that, owing to the absence of the other commissioners, the matter could not be taken up then, but that the assessments would either be made right or another day of court would be had; that they relied upon this assurance and did not file exceptions; but, notwithstanding the promise, the assessments were made binding, and were approved that day. The hearing was before the county judge, Hon. G. E. Keck, and the fact that he, at the request of reputable counsel for the district, entered the order complained of immediately after the alleged statement of Mr. Crigger, is weight in itself against the probability of the statements having been made.

"Some 65 or 70 landowners plead this fraud, but only a few of them testify with reference to the alleged statements of Mr. Crigger as a representative of the district. The others do not show that they were present or were in any way deterred from making a defense by reason thereof. Some eight or ten in all were represented by an attorney at the time, and he testified that he was employed merely with reference to the adjustment of damages and not to fight the assessment; that he did not hear or learn of the statement complained of. Mr. Crigger and his attorney, Mr. Costen, both positively deny any such agreement. It is not customary for contesting litigants to enter the court-room at the hour of trial without either counsel or pleadings, and the fact that the few who did have counsel did not employ him to fight the assessment is significant. The actions of defendants speak louder than their words, and the question of fact must be decided against them, making unnecessary a consideration of whether they would have had a legal defense to the assessments had they made a contest."

We concur also in the view expressed by the court that his finding of fact made it unnecessary to consider whether appellants would have had a legal defense to the assessments, had they made a contest.

This suit, which, as we have said, was brought to enforce the payment of delinquent assessments, was filed

August 29, 1921; and an answer was filed on December 10, 1921, which was nearly a year and a half after the confirmation of the assessments complained of. This answer is the first pleading of appellants questioning their assessments; and this lapse of a year and a half is, itself, a circumstance tending to sustain the chancellor's finding of fact.

The assessments became final under the terms of the act under which they were levied because no objections were made thereto in the time and manner provided by the act. In the recent case of *Road Imp. Dists. 1, 2 and 3 v. Crary,* 151 Ark. 484, we said: " We have often decided that the method provided in the statute for attacking the validity of the assessment of benefits is exclusive, and that it must be pursued within the time prescribed by the statute. In other words, it has been settled by repeated decisions of this court that a collateral attack cannot be made upon the assessment of benefits unless void on the face of the proceedings. *Reitzammer* v. *Desha Road Imp. Dist.,* 139 Ark. 168; *Summers* v. *Conway & Damascus Rd. Imp. Dist.,* 139 Ark. 277; *Nettles* v. *Hazlewood Road Imp. Dist.,* 144 Ark. 632; *Sikes* v. *Douglas,* 147 Ark. 469."

It follows, from what we have said, that the decree of the court below must be affirmed, and it is so ordered.