HOWELL v. WHITE RIVER LEVEE DISTRICT.

Opinion delivered June 13, 1927.

1. LEVEES—RELIEF FROM ASSESSMENTS.—Under Sp. Acts 1921, p. 1133, providing that persons aggrieved by levee assessments shall have 20 days in which to take action, held that, on failure so to act, the assessments are incontestable as to them.

2. LEVEES—VALIDITY OF ASSESSMENT.—The fact that an improvement under a special act of 1920 which authorized a levee district to straighten the channel of a river and construct drains and levees necessary to protect lands from overflows had not been completed was not ground for setting aside the assessments for which taxes had become delinquent where the assessment made was based on the assumption that the improvement would be completed.

3. LEVEES—REVIEW OF ASSESSMENTS.—In reviewing an assessment of benefits, the Supreme Court must consider the fact that the assessors are more familiar with conditions to be considered in making their assessments than the reviewing court can be.

4. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— Where the reviewing court cannot say, under the evidence, that the assessments of benefits in a drainage district were erroneous, the decree of the chancery court sustaining the assessments must be affirmed.

Appeal from Woodruff Chancery Court, Southern District; A. L. Hutchins, Chancellor; affirmed.

Roy D. Campbell, for appellant.

Ross Mathis, for appellee.

SMITH, J. Appellants own a large body of land in the White River Levee District, and seek by this suit to restrain the officers of the district from prosecuting a suit to enforce payment of certain delinquent taxes assessed against their lands. They prayed this relief upon the ground that the lands had received no benefit and could receive none from the proposed improvement.

In support of the allegations of the complaint, appellants offered testimony to the effect that their lands were situated between White and Cache Rivers, and were overflowed from the waters of both streams, and that the lands would be overflowed by the Cache River even though the lands were protected from the overflow of the White River by the levee along that stream.

Act No. 97 of the 1911 session of the General Assembly (Special and Private Acts 1911, page 215) created and defined the boundaries of the White River Levee District, and, pursuant to the authority of this act, betterments were assessed to pay the cost of the proposed levee. It appears that betterments were assessed against the lands of appellants, but they paid no taxes, and no taxes appear to have been extended against their lands until 1919, when the taxes for that year were assessed against the lands of appellants. They thereupon brought suit to enjoin the collection of the taxes, and alleged that the lands, by reason of their location,

had not and could not receive any benefits from leveeing White River. The depositions of several witnesses were taken in support of the allegations of the complaint. This testimony was to the effect that a large part of appellants' lands were low and swampy and unfit for cultivation as the result of the annual overflows of both the White and Cache Rivers, and that the leveeing of the White River did not prevent the overflow of the lands by the Cache River, although the depth and duration of the overflow was lessened by protection from the White River.

The suit to enjoin the collection of the 1919 tax does not appear to have been prosecuted to a final decree, and while it was pending there was passed, at the extraordinary session of 1920, an act entitled "An act in aid of the White River Levee District." This is one of the unpublished acts.

This act of 1920 authorized the board of directors of the White River Levee District to straighten the channel of the Cache River and to construct such drains, ditches and levees "as will be necessary to protect the lands of the district from overflows from the waters of Cache River," and, to accomplish that end, the White River Levee District was authorized to issue interest-bearing bonds in a sum not exceeding $400,000.

At the ensuing regular 1921 session of the General Assembly an act was passed which provided for a reassessment of the benefits in the White River Levee District, and § 1 of the act recited that the existing assessments were inequitable. Special Acts 1921, page 1133.

The act of 1921 provided that the total amount of benefits theretofore assessed should not be reduced, but that the existing assessments should be equalized, and, to that end, assessors were named in the act, who were directed "to make a reassessment of the benefits that will accrue and that have accrued," and to give notice of the assessment in the manner provided by the act creating the district. Section 5 of the act creating the

district required the president of the board of directors to give notice of the original assessment and of the time and manner in which protests might be made. It was there provided that any person, firm, company or corporation aggrieved by said assessment shall have twenty days in which to take action against the same, if such they have, and their failure so to do shall render said assessment incontestable as to them, either at law or in equity.

The reassessment was made, and appears to be the assessment here attacked, but it does not clearly appear that this attack was brought within the time and manner provided by the original and amendatory acts above referred to, and, unless this was done, the assessments became final and binding. *House* v. *Road Imp. Dist. No. 2,* 158 Ark. 330, 251 S. W. 12.

We think, however, that the action of the court below in dismissing the complaint of appellants as being without equity should be affirmed, even though the action is not barred by the failure of appellants to institute proceedings within the time limited by law to attack their assessments.

The affirmative showing is made that the improvement authorized by the special act of 1920 was never completed. The straightening and deepening of the channel of Cache River was begun, but the work stopped about seven or eight miles from appellant's lands. This appears to have been due to the failure of the bank in which the funds of the district were deposited, and appellants insist that, inasmuch as the proposed improvement authorized by the act of 1920 has not been completed, and may not be completed, the proposed improvement cannot be taken into account in determining whether the lands will be benefited. The answer to this contention is that the assessment of benefits was based upon the assumption that the improvement authorized by the act of 1920 would be completed, and the assessment cannot be defeated because this was not done. *Salmon* v. *Board*

*of Directors, etc.,* 100 Ark. 366, 140 S. W. 585; *Road Imp. Dist. No. 3* v. *Norris,* 153 Ark. 635, 241 S. W. 389; *Hunt* v. *Road Imp. Dist. No. 12,* 168 Ark. 266, 270 S. W. 961.

It is stipulated that the assessors, in making the last assessment, reassessed the benefits "in accordance with the law appointing them, and in strict conformity thereto these assessors made a reassessment of all lands of the district, and, to the best of their ability, rendered a fair and impartial assessment upon all lands in said district." It appears also that the present assessment of appellants' lands was greatly reduced, some of the assessments being not more than a third of the original.

It was also stipulated by counsel that the depositions taken in the first suit brought by appellants to enjoin the collection of the taxes against appellants' lands might be read in evidence in the present case, and it is upon these depositions that appellants now ask relief, but it will be remembered that these witnesses did not take into account the improvement of Cache River, as that improvement was not then authorized.

The testimony does appear to establish the fact that, unless Cache River is improved, that stream would overflow appellants' lands, even though White River were leveed, but this testimony also shows that the extent and duration of the overflow would be lessened by leveeing White River, so that some benefit would be conferred even though complete relief was not afforded.

In the case of *Memphis Land & Timber Co.* v. *St. Francis Levee District,* 64 Ark. 258, 42 S. W. 763, the landowner resisted the collection of the tax imposed on its land upon the ground that the levee would not afford protection from surface water, and testimony was offered that certain lands would not be benefited by the levee for the reason that they are wet from winter and spring rains from six to nine months in the year, and that certain other lands would not be benefited because they are above overflow. Mr. Justice BATTLE, speaking for the court, said that this proof was not sufficient to show

that such lands would not be benefited by the levee, as the owner might be enabled to reclaim them by means of drainage, and the relief prayed was denied the land-owner.

The assessors, no doubt, took all the facts here stated into account in making the last assessment, including the possible effect of the improvement authorized by the act of 1920.

In reviewing assessments in cases of this kind we must, of necessity, take into account the fact that the assessors are more familiar with the conditions to be considered in making up their assessments than we can be. In the case of *Rogers* v. *Arkansas-Louisiana Highway Imp. Dist.*, 139 Ark. 322, 213 S. W. 749, we said:

"We announced the rule to be followed by this court in the decision of questions of this character in the case of *Mo. Pac. Ry. Co.* v. *Monroe County Road Imp. Dist.*, 137 Ark. 568, 209 S. W. 728, where it was said: 'An estimate of benefits resulting from a local improvement to a given piece of property is largely a matter of opinion, and generally there is a wide difference of opinion on such questions. Under those circumstances a great amount of deference is due to the judgment of the board of assessors, who are constituted as a special tribunal for the purpose of determining that question, and courts reviewing the proceedings of the assessors should not substitute the judgment of the judges for that of the assessors, unless the evidence clearly shows that the assessments are erroneous.' " See also *Wilkinson* v. *St. Francis County Road Imp. Dist. No. 1*, 141 Ark. 164, 216 S. W. 304.

There is no contention that the assessors acted arbitrarily in making the assessment. On the contrary it is stipulated that, to the best of their ability, they made a fair and impartial assessment upon all the lands in the district, and their work cannot be set aside by us because the proposed improvement of Cache River, which they were required to take into account, was not completed.

·As we are unable to say that the evidence clearly shows that the assessments are erroneous, the decree of the court below must be affirmed, and it is so ordered.

### DISSENTING OPINION.

MEHAFFY, J. I cannot agree with the opinion of the majority in this case for the reason that I think the decision violates the Constitution of the United States and also the Constitution of the State of Arkansas. The testimony, as I view it, shows conclusively that the lands of appellants are not only not benefited, but will not be benefited by the improvement. According to my view of this case, it is a taking of appellant's property without any compensation whatever. I think that the testimony conclusively shows this, and the decision of the court therefore violates the provisions of the Constitution of the United States, above mentioned, and violates the provisions of the Constitution of Arkansas.

Section 22 of article 2 of the Constitution of the State of Arkansas provides:

"The right of property is before and higher than any constitutional sanction, and private property shall not be taken, appropriated or damaged for public use without just compensation."

It is said in the majority opinion:

"The affirmative showing is made that the improvement authorized by the special act of 1920 was never completed. The straightening and deepening of the channel of Cache River was begun, but the work stopped about 7 or 8 miles from appellant's lands. This appears to have been due to the failure of the bank in which the funds of the district were deposited, and appellants insist that, inasmuch as the proposed improvement authorized by the act of 1920 has not been completed, and may never be completed, the proposed improvement cannot be taken into account in determining whether the lands will be benefited."

The answer to this contention is that the assessment of benefits was based upon the assumption that the

improvement authorized by the act of 1920 would be completed, and the assessment cannot be defeated because this was not done.

In other words, as I understand the majority opinion, you can take one's property without any compensation whatever, if you base the assessment upon the assumption that an improvement will be made, and on the further assumption that it will benefit your lands. Such is not the meaning of the Constitution as I understand it.

The following cases are then cited in support of the declarations above set out by the majority opinion: *Solomon* v. *Board of Directors, etc.*, 100 Ark. 336, 140 S. W. 585; *Road Imp. Dist. No. 3* v. *Morris*, 153 Ark. 635, 241 S. W. 389; *Hunt* v. *Road Imp. Dist. No. 12*, 168 Ark. 266, 270 S. W. 961.

I do not understand the above cases support the doctrine announced by the majority in this case. The first case cited is where the parties did not contend that they would not be benefited by the improvement, but the contention there made was that the appellant's land had not been benefited by that portion of the improvement already made, and that they could not require taxes to be paid by one until the improvement had been so far completed that his lands would be benefited. It was not contended in that case that the improvement would not benefit his lands, and it was not contended that the improvement had been abandoned. The only contention was, as I understand it, that the improvement had not gone far enough at that time to benefit appellant's land.

The court said that the scheme contemplated by the creation of the district was for the construction of the levee as a whole, and the benefits were to accrue from the consummation of the plan. And the court further held, in effect, that to fail or refuse to collect taxes until the entire improvement was completed and everybody's lands in the district benefited, would frustrate the whole scheme, because, under a view like that, the improvement

or construction work could not be begun until all the funds were raised for the purpose. And, according to appellant's contention in that case, you could not raise any funds until the work had been done.

The next case referred to by the court to sustain the proposition, was a road district created under the Alexander Road Law, where there was authority to reassess, and it does not seem to me that it supports the decision in this case.

And in the next case referred to by the opinion, I do not think that the same question was decided that is involved in this case. In fact, I do not know of any decision of any court that has held, where the proof shows that no benefits have or will accrue to one's lands, that it can be assessed at all.

This court has repeatedly held that the only theory upon which assessments can be collected is the theory that the benefits accruing from the improvement is equal to or greater than the amount of tax. I know of no decision of this court that holds to the contrary. And if any decision was to the contrary, it would certainly violate the provisions, not only of the Constitution of the United States, but of the Constitution of the State of Arkansas. If that theory is true, and it will not be disputed, then how can the fact that the bank failed, and money belonging to the district was lost, justify an assessment against appellant's lands unless they are benefited in some way?

In a case in the Federal court it was contended that something over 10,000 acres of land would receive no benefits, and the district judge stated as follows: "So the question we are called upon to determine is whether the facts in this case show that there is no benefit, either direct or indirect, to the land in controversy, or, if indirect, that it is so remote that it is purely speculative."

Numerous authorities are cited, and the Court of Appeals, after quoting the above statement, continued:

"And thereupon the court held that the facts do not overcome the presumption arising from the assessments that the lands would receive benefits. The case made by

the plaintiffs on the facts was not that all the 10,320 acres would not receive benefits, but that parts of the tract would not receive benefits, some being at too high an altitude and some too low to be affected by the improvement; and we think that claim was clearly established, and that the court fell into error when it denied plaintiffs relief.* * * It is contended that, when the system is put through, it will permit the drainage of the lower lands on the east side of the lake into the lake. We do not see how that may be so, inasmuch as the proposed plan will not reduce the waters in the lake to a lower minimum level than they now have, nor how the swamp lands in the tract could receive any benefit if protected from overflow by the system. * * * On the whole, we are convinced from this record that much of the land lies at such elevation that the system when completed will be of no benefit to it." *Kansas City Life Ins. Co.* v. *Chicot County Drainage Dist.*, 5 Fed. Rep. 2d. Series 605.

The proof in this case shows that appellant's lands have not been benefited, that the scheme has been abandoned, and to make them pay any assessment at all under these conditions, I think, is taking their property without any compensation. I think the proof shows that, if the Cache River Improvement was completed, the only way it would affect appellant's land would be to somewhat reduce the depth of water on appellant's land during an overflow. In other words, if the Cache River improvement had been completed, the water from the overflow on appellant's land would not be quite as deep as it would without the improvement. But this improvement has been abandoned, and there is therefore, as I view it, no benefit accruing to appellant's land, and it should not be assessed, and the case should be reversed.