DOWELL *v.* SLAUGHTER.

4—2566

Opinion delivered May 23, 1932.

*J. V. Walker, Cravens & Cravens* and *Dwight L. Savage,* for appellant.

*John R. Duty, John Mayes* and *C. D. Atkinson,* for appellee.

SMITH, J. Appellants, who are citizens and taxpayers of Washington County, filed a complaint on October 7, 1931, in which they alleged that on July 6, 1931, a day of the July, 1931, term of the county court, there was entered upon the records of that court the following order:

"NOTICE

"The Washington County Court, July term, 1931, first day, July 6, 1931, in the matter of the debt of Washington County, Arkansas, due December 7, 1924.

"Declaration of indebtedness and order.

"This, the Washington County Court, having made a thorough examination and investigation of the indebtedness of Washington County, Arkansas, existing on the 7th day of December, 1924, being the day when amendment No. 11 to the Constitution of the State of Arkansas was adopted and became effective, finds and declares that the indebtedness of Washington County existing on the 7th day of December, 1924, amounted to the sum of $65,-000, still exists, is still outstanding, and on this date remains unpaid.

"The clerk of this court is directed to publish for one insertion, in some newspaper having a *bona fide* circulation in the county, a copy of this order, to the end that any person who desires to question the correctness of the finding here made may bring suit for that purpose within thirty days after such publication.

"Done and ordered in open court, this the 6th day of July, 1931.

"J. Lona Slaughter, Judge."

A copy of this order, duly certified by the clerk of the county court, was published in a weekly newspaper published in that county on July 6, 1931, and on August 10, 1931, bonds were issued in the name of Washington County in the sum of $65,000, and sold for that amount.

On the date of the issuance and sale and delivery of these bonds, the following order was made and entered of record in the county court:

"Washington County Court, July term, 1931, August 10, 1931. In the matter of the transfer of surplus funds in the bond account to the county general account.

"Now on this, the 10th day of August, 1931, comes on to be heard the matter of transferring funds from the bond account to the county general account, and the county treasurer, Chas. S. Stearns, being present in person, and, upon the evidence adduced at the hearing, the court finds:

"That on August 10, 1931, a bond issue was made for Washington County, Arkansas, in the sum of $65,000, and that on the 10th of August, 1931, the treasurer of said county received the proceeds of said bond issue in the sum of $65,000; and the court further finds that the purpose of said bond issue was to pay off the indebtedness of said county as of date December 7, 1924, and that warrants issued and then existing for said indebtedness have heretofore been paid by the treasurer of said county out of the general funds belonging to said county, and that there is now a surplus in the bond account in the sum of $65,000, and that there is now no outstanding warrants against said account, and that by virtue of the authority of act No. 30, of the Acts of the General Assembly for the State of Arkansas, in the year 1927, and under the law, said bond account should be transferred to the county general account and the county reimbursed.

"That the warrants drawn on the following funds are payable out of the county general account, county general, pauper, jail and inquisition, justice of the peace and circuit court funds.

"Therefore it is considered, ordered and adjudged by the court that the sum of $65,000, together with the interest on daily balances on said amount since the 10th day of August, 1931, be and the same is hereby transferred, and the county treasurer is hereby ordered to transfer on his books said amount from the bond account to the county general account and pay warrants drawn on the above named funds out of the county general account.

"J. Lona Slaughter, Judge."

It was alleged by the citizens and taxpayers in their complaint that this order of July 6, 1931, was false and fraudulent, in that there was no indebtedness then outstanding of the county which had been incurred prior to December 7, 1924. It was prayed that the court appoint a master to inquire into and report upon the state of the county's finances, and that the order of the county court be held to be illegal, fraudulent and void, and that the county treasurer be enjoined from paying any of said bonds.

A demurrer was filed alleging five grounds therefor, and the court sustained the 3d, 4th and 5th grounds. The demurrer reads as follows:

"Come now the defendants in the above entitled action and demur to the complaint as amended of the plaintiffs in said action upon the following grounds:

"1st. That the court has no jurisdiction of the persons of the defendants or of the subject-matter of the action.

"2d. That there is a defect of parties defendant.

"3d. That the complaint does not state facts sufficient to constitute a cause of action.

"4th. That the complaint shows upon its face that the cause of action attempted to be stated by the complaint as amended is barred by the statute of limitations.

"5th. That the complaint shows upon its face that the alleged cause of action attempted to be stated therein has been adjudicated by the county court of Washington County, Arkansas."

From the decree of the court sustaining the demurrer to the complaint upon the grounds above stated is this appeal.

This appeal challenges the validity of the bonds issued and sold on August 10, 1931, pursuant to the order of the court made and entered on July 6, 1931.

In making the order of July 6, 1931, the court acted under the authority of the amendment to the Constitution adopted at the general election held in 1924, and which has frequently been referred to as amendment No. 11. Owing to the confusion arising from the fact that certain amendments to the Constitution had been numbered in the order of their submission, rather than in the order of their adoption, the Secretary of State has compiled a list of the amendments now in force, and this list, as thus compiled, has been published in vol. 184 of the reports of this court, pages XIX, *et seq.*, and the amendment heretofore frequently referred to as No. 11 has been given No. X, and we employ that number in referring to it.

It was held in the case of *Matheny* v. *Independence County,* 169 Ark. 925, 277 S. W. 22, that amendment No. X (there referred to as amendment No. XI) became effective December 7, 1924, and that it was self-executing, even without an enabling act.

By this amendment to the Constitution, the counties of the State (as well as cities and incorporated towns) were given authority * * * "to secure funds to pay indebtedness outstanding at the time of the adoption of this amendment, * * *" by issuing interest-bearing certificates of indebtedness or bonds, for the payment of which authority was conferred to levy a tax, in addition to the taxes theretofore authorized, not exceeding three mills, and to levy and collect such tax until such indebtedness was paid.

At the ensuing session of the General Assembly an enabling act was passed, entitled, "An Act to Facilitate the Funding of the Debts of Counties, Cities and Incor-

porated Towns.'' Act 210, Acts of 1925, page 608. Section 1 of this act provides as follows:

''Before the issue of any county or city bonds under this act, the county court shall, by order entered upon its records, declare the total amount of such indebtedness or the city or town council shall by ordinance declare the total amount of such indebtedness. Such order of the county court shall be published immediately for one insertion in some newspaper published in the county, and such ordinances of the city or town council shall be immediately published in some newspaper issued in such city or town, if there be one, and, if not, in some newspaper published in the county; and any property owner who is dissatisfied may, by suit in the chancery court of the county, brought within thirty days after the publication of such order or ordinance, have a review of the correctness of the finding made in such order or ordinance; but if no such suit is brought within thirty days, such finding shall be conclusive of the total amount of such indebtedness, and not open to further attack, and if said suit is brought the adjudication shall settle the question, and appeal therefrom must be taken and perfected within thirty days. If any officer of such county, city or town shall wilfully make any false statement as to the amount of its indebtedness, he shall forfeit his office and be ineligible to hold any other office of profit or trust in this State.''

Other sections of the statute provide that the bonds thus authorized to be issued shall be negotiable coupon bonds, payable serially, through a period not exceeding forty years, and shall bear interest at a rate not exceeding six per cent.; that the bonds shall not be sold at less than par, but with the privilege of converting into bonds bearing a lower rate of interest, and for the levy of a tax to pay the bonds.

A penalty is prescribed against any officer who shall include in the debt to be funded any debts which were not due in good faith at the time of the adoption of the

amendment, and the fiscal year is made coincident with the calendar year.

These provisions are not here involved and need not be enlarged upon.

It will be observed that, under § 1 of the act of 1925, copied above, the county court (in case of counties) is required, before issuing bonds, to ascertain the outstanding indebtedness of the county on the date upon which the amendment became effective, which, as has been said, was December 7, 1924, and, after ascertaining that fact and entering an order of court evidencing that finding, notice thereof shall be given in the manner there provided.

The making of this finding and the publication thereof is made a condition precedent to the exercise of the power to issue bonds, and, while the amendment does not require that the notice shall announce this purpose, the publication of the notice is made tantamount to a declaration of that intention.

The act provides that "any property owner who is dissatisfied may, by suit in the chancery court of the county, brought within thirty days after the publication of such order or ordinance, have a review of the correctness of the finding made in such order or ordinance; but if no such suit is brought within thirty days, such finding shall be conclusive of the total amount of such indebtedness, and not open to further attack, and if said suit is brought, the adjudication shall settle the question, and appeal therefrom must be taken and perfected within thirty days."

The property owners in the instant case seek to excuse their delay of over thirty days after the publication of the court order before bringing suit by alleging that they were unaware of its publication until after the thirty days had expired. But the act does not authorize suit within thirty days after knowledge had; on the contrary, the act requires that the suit be "brought within thirty days after the publication of such order."

Inasmuch as the complaint concedes that the suit was not brought within the time limited by the act, the validity of the bond sale depends upon the validity of the act, for, if this suit must be brought within thirty days after the publication of the court order, and not thereafter, the instant suit was not brought within that time, and the demurrer was properly sustained for that reason, if the act itself is valid.

For the reversal of the decree of the court sustaining the demurrer, it is insisted that, under the allegations of the complaint, the county court was without jurisdiction to make the order, that there was no authority to issue bonds unless there was an outstanding indebtedness on December 7, 1924, and, as the complaint alleged there was no indebtedness as of that date, the truth of which allegation the demurrer confessed, there was no authority to issue bonds, and the action of the county court was therefore *coram non judice,* and is open to the attack here made upon it.

We do not concur in this view. The county court had the jurisdiction conferred by the amendment and the enabling act passed pursuant thereto to issue bonds to discharge the indebtedness named, and the court was required to find, before exercising this jurisdiction, that there was such debt, and the amount thereof, and, having made that finding, to publish notice thereof, to the end that property owners who were dissatisfied with such finding might have a review of the correctness of it made in the chancery court. In order to make the bonds salable, by having this question put at rest, the right of the property owner to raise the question was limited to thirty days, this being regarded by the General Assembly in the passage of the enabling act as a reasonable time within which to raise that question. The notice was given, and more than the time limited was allowed to expire before this right was exercised, and in the meantime the bonds were sold and paid for, and the rights of the bondholders have intervened. These bonds were sold and paid for under an order apparently valid upon its face,

and the rights of the holders of these bonds must be protected unless the proceeding leading to their sale is void.

It is no new doctrine to hold that, when the right of a court of superior jurisdiction to exercise a jurisdiction conferred is dependent upon the existence of a given state of facts, the court has the right and is under the duty to ascertain whether those facts exist, and its finding upon that question is not subject to a collateral attack.

For instance, the case of *Whitford* v. *Whitford*, 100 Ark. 63, 139 S. W. 653, was one in which there was a contest between the mother and the alleged wife of a decedent to recover compensation for his wrongful death. The decision of this question turned upon the validity of a decree for divorce, it being contended by the mother that the alleged widow was not the lawful wife of her son, for the reason that she had obtained a divorce from a former husband, before marrying her son, without having first resided in this State for one year before instituting the suit for divorce, as required by the laws of this State.

The statute then in force provided that ''The plaintiff, to obtain a divorce, must allege and prove, in addition to a legal cause for divorce: First. A residence in the State for one year next before the commencement of the action.'' As a condition upon which the jurisdiction of the chancery court might be invoked to grant a divorce, the plaintiff was required to allege and prove a residence in this State for a year next before the commencement of the action, and the mother insisted that as such proof could not have been truthfully made, the decree of the chancery court granting a divorce was void.

The reasoning of the court in overruling that contention is apposite here, and we quote from it as follows:

''In determining the sufficiency of a judgment against collateral attack, a distinction must be observed 'between those facts which invoke the jurisdiction of the court over the parties and subject-matter and those *quasi* jurisdictional facts, without allegation of which the court cannot properly proceed and without proof of which

decree should not be made; absence of the former renders the judgment void and assailable collaterally, but not so as to the latter.' (23 Cyc., 1074.) 'Where the court judicially considers and adjudicates the question of jurisdiction, and decides that the facts exist which are necessary to give jurisdiction of the case, the finding is conclusive, and cannot be controverted in a collateral proceeding.' (*Id.* 1088.) 'A judgment cannot be impeached collaterally on account of any defects in the pleadings. Its validity cannot be impugned, for instance, by showing that a wrong form of action was chosen, or that the complaint does not state facts sufficient to constitute a cause of action.' *Id.,* 1094; *Warner* v. *Hess,* 66 Ark. 113, 49 S. W. 489.

"It seems to be well settled that a judgment rendered by a court having power to deal with the general subject of the action, although against the facts or without facts to sustain it, is not void as rendered without jurisdiction and cannot be questioned collaterally. 14 Cyc. 723.

" 'The fact of required residence of plaintiff in a divorce suit cannot be collaterally questioned if it was a jurisdictional question necessarily passed on by the court in its finding and decree.' *Hilbish* v. *Hattle,* 33 L. R. A. 783."

Counsel for the mother in that case conceded the principle that courts of general jurisdiction, having decided in favor of their jurisdiction, are presumed to have acted upon evidence justifying such decision, but it was contended that "such presumption is indulged only where the record is silent; where the evidence appears in the record with respect to the jurisdiction on which the decree is based, no presumptions are indulged in." In answer to this argument, the court said: "But this, we think, must necessarily be confined to questions of jurisdiction which arise in regard to the *person* or *subject-matter* of the action. Otherwise, every judgment rendered by a court where its jurisdiction rested upon its having determined the existence of a certain fact upon

the existence of which its jurisdiction to proceed to judgment must depend rests forever upon the dubious proposition as to whether every other court whose proceedings encounter it will take the same view of what was established by the evidence before the court that rendered it.''

It is true the instant case is not one in which there are adversary parties, and is one in which the public generally has an interest. Upon this question the court, in the Whitford case, *supra,* said: ''We do not overlook the fact that a divorce proceeding is one in which the public is interested. The parties can waive nothing essential to the validity of the proceeding, and all statutory requirements must be observed; but, in determining upon collateral attack, whether such has or has not been the case, we know of no reason why the same verity should not be imported to a decree for divorce which guards the sanctity of a decree rendered by a superior court having jurisdiction of the parties and the subject-matter.''

The instant proceeding was commenced as an *ex parte* case, but it was one in which any property owner had the right to intervene, provided he did so within the time limited for that purpose. We have before us a record containing a recital of the jurisdictional fact which the court was required to find, to-wit, that there was an indebtedness, before exercising its jurisdiction, and, as no one has questioned that finding within the time and manner allowed by law, it has become final.

In the case of *Blanton* v. *Forrest City Mfg. Co.,* 138 Ark. 515, 212 S. W. 330, it was said: ''In determining the validity of a judgment upon a collateral attack, a distinction must be observed between those facts which involve the jurisdiction of the court over the parties and subject-matter, and those *quasi* jurisdictional facts, without allegation of which the court cannot properly proceed and without proof of which a decree should not be made. The absence of the former renders the judgment void upon collateral attack.'' See also *Merchants' & Planters' Bank* v. *Hammock,* 178 Ark. 746, 12 S. W. (2d) 421.

Here there were no parties unless property owners made themselves such, and the jurisdiction of the court over the subject-matter is not denied.

This is not a case where an order was entered which the court was without power to make. It had that power, and the only question presented is that of the existence of the *quasi* jurisdictional fact which the court was required to find, and did find, before exercising its power to sell bonds, to-wit, the existence of the indebtedness.

It was said in the case of *Stumpff* v. *Louann Provision Co.*, 173 Ark. 196, 292 S. W. 196, that "The county court is a court of superior jurisdiction, and its judgment, rendered in pursuance of jurisdiction rightfully acquired, cannot be attacked collaterally. *Sharum* v. *Meriwether*, 156 Ark. 331, 246 S. W. 501."

We do not pursue the discussion of this subject further, as a concrete application of the principles involved have been made in identical proceedings.

In the case of *Stahl* v. *Sibeck*, 183 Ark. 1146, 40 S. W. (2d) 442, it was said: "The order of the county court in 1925 found that the county was indebted in the sum of $350,000. No person brought any suit to review the finding within the time limited, and it thereupon became 'conclusive of the total amount of such indebtedness, and not open to further attack,' and is *res judicata*." See also *Stranahan, etc., Inc.*, v. *Van Buren County*, 175 Ark. 678, 300 S. W. 382.

It is finally insisted that, if the statute be construed as we have here construed it, it is unconstitutional as being arbitrary and unreasonable and inadequate to afford the property owners an opportunity to resist the proceeding. This contention may be disposed of by saying that statutes have been frequently upheld by this court, some of which provide even less than thirty days' notice of proceedings whereby taxes were imposed which became liens upon the lands of the territory affected. Among these are: *Luck* v. *Magnolia-McNeil Road Imp. Dist. No. 1*, 141 Ark. 603, 217 S. W. 781; *House* v. *Road*

*Imp. Dist. No. 2,* 158 Ark. 330, 251 S. W. 12; *Howell* v. *White River Levee Dist.,* 174 Ark. 381, 295 S. W. 381.

As it appears from the allegations of the complaint that this proceeding to question the order of the county court was not begun within the time limited by law for that purpose, and no ground of avoidance was shown, the right to proceed was properly raised by demurrer. *Smith* v. *Missouri Pacific R. R. Co.,* 175 Ark. 626, 1 S. W. ('2d) 48.

It follows, from what we have said, that the demurrer was properly sustained, and the decree is therefore affirmed.