BEASLEY *v.* COMBS, JUDGE.

4-5450                                                   125 S. W. 2d 806

Opinion delivered February 6, 1939.

*Duty & Duty* and *Vol T. Lindsey,* for petitioner.

*Earl Blansett,* for respondent.

HUMPHREYS, J. This is a petition to this court for a writ of prohibition against the Benton circuit court and the judge thereof to prevent said court from entertaining an appeal from an order of the county court of Benton county made and entered on September 21, 1938, which order is as follows:

"In the County Court of
Benton County, Arkansas

"In the Matter of the Debt of
Benton County, Arkansas, due
December 7, 1924.

"Order Declaring the Indebtedness of Benton County, Arkansas, Outstanding at the Time of the Adoption of Amendment No. 10 to the Constitution of the State of Arkansas.

"This court having made a thorough investigation of the indebtedness of this county, existing on the 7th day of December, 1924, being the day when Amendment No. 10 to the Constitution of the State of Arkansas went

into effect, finds that said indebtedness of said county on that day amounted to the sum of forty thousand, forty dollars and 24/100 dollars ($40,040.24), all of which is still outstanding; and the clerk of this court is directed to publish for one insertion in some newspaper issued and having a *bona fide* circulation in this county, a copy of this order, to the end that any person who desires to question the correctness of the finding here made may bring suit for that purpose within thirty (30) days after such publication.

"This 21 day of Sept., 1938.

"Fred Berry, County Judge."

On the same date a notice of the order issued by the county court was published in the manner and for the time required in the Benton County Democrat, a weekly newspaper of general and *bona fide* circulation in Benton county. The notice is as follows:

"Notice

"In the County Court of Benton county, Arkansas "In the matter of the debt of Benton county, Arkansas, due December 7, 1924.

"Order declaring the indebtedness of Benton county, Arkansas, outstanding at the time of the adoption of amendment No. 10 to the Constitution of the State of Arkansas.

"This court, having made a thorough investigation of the indebtedness of this county, existing on the 7th day of December, 1924, being the day when amendment No. 10 to the Constitution of the State of Arkansas went into effect, finds that said indebtedness of said county on that day amounted to the sum of forty thousand, forty dollars and twenty-four cents ($40,040.24), all of which is still outstanding; and the clerk of this court is directed to publish for one insertion in some newspaper issued and having a *bona fide* circulation in this county, a copy of this order, to the end that any person who desires to question the correctness of the finding here made may bring suit for that purpose within thirty (30) days after such publication.

"This 21st day of September, 1938.

"Fred Berry,

"County Judge."

The certificate of the publication of the notice of said order is as follows:

"I, G. L. Lindsey, do solemnly swear that I am the publisher of the Benton County Democrat; that the same is a weekly newspaper of general and *bona fide* circulation in Benton county, Arkansas, and I do also solemnly swear that the annexed advertisement was inserted 1 consecutive weeks in the Benton County Democrat, Bentonville, Arkansas, beginning on the 22 day of Sept., 1938.

"G. L. Lindsey,

"Publisher.

"Sworn to and subscribed before me this 21 day of Nov., 1938.

"Bess Pace, County Clerk."

On the 10th day of December, 1938, W. L. Marley, a citizen and taxpayer of Benton county, filed in the county court of Benton county an affidavit for appeal from said order which is as follows:

"In the county court of Benton county, Arkansas.

"In the Matter of the Debt of Benton county, Arkansas, due December 7, 1924.

"Affidavit for Appeal

"Comes now W. L. Marley, citizen and taxpayer of Benton county, Arkansas, and prays an appeal from this court and from its order, judgment and finding on the 21st day of September, 1938, to the circuit court of Benton county, Arkansas, and for cause states: That he as such taxpayer and citizen is aggrieved by said order, judgment and finding so made by said court; that said appeal is not taken for the purpose of delay, but that justice may be done him.

"(Signed) W. L. Marley

"Subscribed and sworn to before me this, the 10th day of December, 1938.

"(Signed) Bess Pace, County Clerk."

An appeal bond in due form was filed in the county court.

On the 10th day of December, 1938, the circuit clerk granted an appeal from said order to the circuit court of said county.

On the 17th day of December, 1938, Fred Berry, as county judge and representative of the county, appeared specially in the circuit court of Benton county for the sole purpose of moving to quash the appeal on the ground that the only remedy open to W. L. Marley as citizen and taxpayer to question the order of the court of date September 21, 1938, finding that the outstanding indebtedness against the county on December 7, 1924, was to bring a suit in the chancery court of said county within thirty days after the order and publication of the notice thereof in accordance with Enabling Act No. 210 of the Acts of the General Assembly of 1925 to review the correctness of the finding of the county court that on December 7, 1924, the county owed or had an outstanding indebtedness against it of $40,040.24.

The motion was overruled over the objection and exception of Fred Berry as the representative of said county and the cause was set down for hearing on December 26, 1938, whereupon application was made to this court for a writ of prohibition to prevent the circuit court and the judge thereof from entertaining said appeal and proceeding with the cause.

A response to the application for the writ of prohibition was filed and the issue joined by the petition and the response thereto is whether W. L. Marley, as a citizen and taxpayer, had a right to appeal from the order of the county court to the circuit court of date September 21, 1938, finding that said county was indebted in the sum of $40,040.24 of date December 7, 1924, or whether his exclusive and only remedy was to bring a suit in the chancery court of said county within thirty days after the publication of the notice of said order in the Benton County Democrat to review the correctness of the finding of the county court that said county was indebted in said sum on December 7, 1924. No suit was filed in the chancery court to review the correctness of the finding of the county court that the county was indebted in said sum on December 7, 1924. The appeal from the county

court order to the circuit court by W. L. Marley as citizen and taxpayer was taken within six months. after the order of the county court was made and. entered of record.

The order of the county court finding the amount of the said indebtedness against said county was made pursuant to Enabling Act No. 210 of the Acts of the General Assembly of 1925 for Amendment No. 10 of the Constitution of 1874.

In so far as applicable to the issue involved Amendment No. 11 (Now No. 10) to the Constitution is as follows:

"The fiscal affairs of counties . . . shall be conducted on a sound financial basis . . . Provided, however, to secure funds to pay indebtedness outstanding at the time of the adoption of this amendment, counties . . . may issue interest-bearing certificates of indebtedness or bonds with interest coupons." Adopted Oct. 7, 1924, effective 60. days after date of adoption.

The Enabling Act No. 210 of the General Assembly of 1925 of said amendment in so far as applicable to the issue involved herein, is as follows:

"Section 1. The county court of any county . . . may issue bonds for the purpose of funding the indebtedness of such county . . . outstanding at the time of the adoption of Amendment No. 11 to the Constitution. . . . Before the issue of any county . . . bonds under this act, the county court shall by order entered upon its records, declare the total amount of such indebtedness. . . . Such order of the county court shall be published immediately for one insertion in some newspaper published in the county, . . . and any property owner who is dissatisfied may, by suit in the chancery court of the county, brought within thirty days after the publication of such order, . . . have a review of the correctness of the finding made in such order; . . . but if no such suit is brought within thirty days, such finding shall be conclusive of the total amount of such indebtedness, and not open to further attack, and if said suit is brought the adjudication shall settle the question

and appeal therefrom must be taken and perfected within thirty days. . . ."

It is contended by respondent that act 210 of the Acts of the General Assembly of 1925 is unconstitutional because it contravenes Art. 7, § 33, of the Constitution of 1874 which, in part, is as follows:

"Appeals from all judgments of county courts . . . may be taken to the circuit court under such restrictions and regulations as may be prescribed by law."

Also that the act is in conflict with Pope's Digest, § 2913, which is as follows:

"Appeals shall be granted as a matter of right to the circuit court from all final orders and judgments of the county court, at any time within six months after the rendition of the same. . . ."

As stated above, the order made by the county judge was made pursuant to and in accordance with Enabling Act No. 210 of the Acts of 1925 for Amendment No. 11 (Now No. 10) to the Constitution of 1874.

It was an order made under a statute which provided a special proceeding and remedy whereby an aggrieved taxpayer or property owner might question the correctness of the order by bringing the suit in the chancery court within thirty days from the publication of the notice of the finding of the county court as to the indebtedness of the county on December 7, 1924, the effective date of Amendment No. 11 to the Constitution of 1874. The order in question had no relation whatever to judgments of county courts from which appeals might be taken under Art. 7, § 33, of the Constitution of 1874 and the Enabling Act of said section of the Constitution providing an appeal shall be granted as a matter of right to the circuit court from all final judgments of the county court at any time within six months after the rendition of same.

Enabling Act No. 210 of the Acts of the General Assembly of 1925 is a special statutory proceeding for carrying out the purpose of amendment No. 10 to the Constitution of 1874 and makes ample provision for the protection of aggrieved taxpayers, property owners or citizens. It is provided in said act that such citizens and

property-owners may proceed in chancery to review the finding of the county judge relative to the amount of indebtedness existing against a county on the effective date of Amendment no. 10 to the Constitution and does not conflict with Art. 7, § 33, of the Constitution providing for appeals from all judgments of county courts which have reference and relate to judgments of a general character and not to final orders of county courts making findings and entering orders under the provisions of a special act.

We do not think act No. 210 of the Acts of 1925 is unconstitutional and void. We think said Enabling Act operates in a different field entirely from Art. 7, § 33, of the Constitution and Enabling Act thereto. The former relates to special orders made under special proceedings and the other to general judgments rendered by county courts. We think the case of *Dowell* v. *Slaughter,* 185 Ark. 918, 50 S. W. 2d 572, is controlling in the case here as the effect of the decision was to construe said Enabling Act as being the only and exclusive remedy available to citizens, property owners and taxpayers. It was, also, decided in that case that the act was not unconstitutional as being arbitrary and unreasonable and inadequate to afford the property owners ample protection.

The temporary writ of prohibition granted in this case is, therefore, on this application made permanent.

GRIFFIN SMITH, C. J., MEHAFFY and BAKER, JJ. dissent.

GRIFFIN SMITH, C. J. (dissenting). Amendment No. 10 to the Constitution, which directs that financial affairs of counties shall be conducted on a sound financial basis, has been construed many times by this court.

At the time the amendment was proposed, and when it was adopted, some of the counties were on a so-called "scrip" basis, and their warrants were depreciated. To afford such counties a means by which this floating indebtedness could be retired, a provision was inserted in Amendment No. 10 authorizing issuance of interest-bearing certificates of indebtedness, or bonds, . . . "to

secure funds to pay indebtedness outstanding at the time of the adoption of this amendment.'"[1]

Determination of indebtedness of Benton county existing as of December 7, 1924, was made by the county court (Judge Berry sitting) September 21, 1938—almost fourteen years after accrual of the right to fund the indebtedness.

The enabling act of 1925 is copied in the majority opinion. Under authority of this measure, there was, in the instant case, publication of the county court's finding that the 1924 indebtedness was $40,040.24. Act 210 provides that any dissatisfied property-owner may, by suit in chancery court, brought within thirty days after publication of notice that there has been a county court finding of indebtedness, . . . "have a review of the correctness of the finding made in such order; . . . but if no such suit is brought within thirty days, such finding shall be conclusive of the total amount of such indebtedness, and not open to further attack."

Article 7, § 33, of the Constitution, allows appeals to the circuit court from all judgments of the county court, to be taken under such restrictions and regulations as may be prescribed by law.

The general statute adopted pursuant to the constitutional right appears as § 2913 of Pope's Digest, the limitation being six months.

No suit was filed in chancery court to question correctness of the Benton County Court order, but in December, following publication of the notice, W. L. Marley prayed and was granted an appeal to the circuit court. The cause was set for hearing December 22, after motion to quash the appeal had been overruled.

This court granted temporary prohibition. By the majority opinion it is held that the writ shall be permanent.

[1] In *Matheny* v. *Independence County*, 169 Ark. 925, 277 S. W. 22, the term "outstanding at the time of this amendment" was construed. In the same opinion it was said: "It is evident that the framers of [Amendment No. 10] intended that thereafter counties, cities, and towns, should confine their expenses for any fiscal year to the revenues for that year."

Respondent contends that Act 210 is void because it attempts to substitute the chancery court for the circuit court as the tribunal in which correctness of the county court judgment is to be determined. Petitioner replies with citations of opinions of this court which apparently uphold constitutionality of Act 210. The majority opinion holds that the Dowell-Slaughter Case[2] is controlling. The proceedings in that case, however, were in chancery court. Validity of Act 210 was not. questioned on the ground that it denied the right of appeal to the circuit court. In the opinion it is said:

"Inasmuch as the complaint concedes that the suit was not brought within the time limited by the act, the validity of the bond sale depends upon the validity of the act, for, if this suit must be brought within thirty days after the publication of the court order, and not thereafter, the instant suit was not brought within that time, and the demurrer was properly sustained for that reason, if the act itself is valid. For reversal of the decree of the court sustaining the demurrer, it is insisted that, under the allegations of the complaint, the county court was without jurisdiction to make the order, that there was no authority to issue bonds unless there was an outstanding indebtedness on December 7, 1924, and, as the complaint alleged there was no indebtedness as of that date, the truth of which allegation the demurrer confessed, there was no authority to issue bonds, and the action of the county court was *coram non judice,* and is open to the attack here made upon it. We do not concur in this view. The county court had the jurisdiction conferred by the amendment and the enabling act passed pursuant thereto to issue bonds to discharge the indebtedness named, and the court was required to find, before exercising this jurisdiction, that there was such debt, and the amount thereof, and, having made that finding, to publish notice thereof, to the end that the property-owners who were dissatisfied with such finding might have a review of the correctness of it made in the chancery court. . . .

[2] 185 Ark. 918, 50 S. W. 2d 572.

"It is finally insisted that if the statute be construed as we have construed it, it is unconstitutional as being arbitrary and unreasonable and inadequate to afford the property-owners an opportunity to resist the proceedings . . . As it appears from the allegations of the complaint that this proceeding to question the order of the county court was not begun within the time limited by law for that purpose, and no ground for avoidance was shown, the right to proceed was properly raised by demurrer."

Although the opinion discusses effect of failure to proceed in the chancery court within thirty days, and holds that such failure bars such inquiry at a later date, it does not say that the right of appeal to the circuit court is lost; nor was the question directly. raised by the pleadings. The decision is that where the complaining party adopts the chancery court as a forum, he is bound by that court's finding that the complaint was not filed within thirty days.

I think effect of the opinion, and of the opinion in *Stranahan, Harris & Oatis, Inc.* v. *Van Buren County*,[3] is to say that Act 210 is a limitation upon the time for questioning correctness of the county court finding of the amount of indebtedness or the time within which suit may be filed, but the Act does not, nor can it, take from the circuit court a jurisdiction conferred by the Constitution.

In the Dowell-Slaughter Case the demurrer admitted there was no indebtedness existing December 7, 1924, yet the opinion holds that the county court had jurisdiction to make the order selling $65,000 worth of bonds.

In the case at bar the circuit court's jurisdiction on appeal is definitely fixed; but, under authority of the Dowell-Slaughter Case, petitioners would have the right to demur.

Since the limitation of six months on appeals from the county court to circuit court was fixed by the General Assembly, under a discretion as to time conferred by the Constitution, it was within the legislative power to

---

[3] 175 Ark. 678, 300 S. W. 382.

say that a failure of complaining parties to file suit in chancery court within thirty days would foreclose inquiry at a subsequent date; or, expressed differently, the legislature had a right to say that a finding by the county court, notice of which was given by publication, would become conclusive unless challenged within thirty days.

Respondent's second petition is that no indebtedness existed as of December 7, 1924; that a judicial finding to that effect is shown of record, and that the determination made by Judge Berry September 21, 1938, was res judicata.

My construction of the majority opinion is that it only holds that no appeal can be taken from the order of September 21. Other judgments by the county court affecting the issue (all in 1938) were: October 24, order for issuance of bonds; November 15, order directing the treasurer to set up a "Bond and Debt Retirement Account," and to place to the credit thereof $40,120.91 realized from the sale of bonds, and "that said sum remain in said account until further orders of this court with reference to paying said debts and of transfer to other accounts for the purpose of paying said indebtedness"; November 16, order transferring money from Bond and Debt Retirement Account to county general fund, and to "pay warrants drawn on the above-named fund out of the county general account."

I do not understand that the majority opinion prohibits the circuit court from entertaining an appeal from the order directing sale of the bonds, or from the other orders mentioned, each of which, under innumerable decisions of this court, has the effect of a judgment, from which appeal may be taken within six months.

The most serious question is respondent's allegation that the county court's 1938 finding that the mentioned indebtedness existed in 1924 is res judicata. I think it was.

Attached to the response—and we must assume that this information was before the court, inasmuch as certified copies of the records in question are presented with the response of the then circuit judge—is a certificate of the county and probate clerk for Benton county, authen-

ticating certain exhibits, including those numbered 4, 5, 6, 7, and 8.

Exhibit 4 is the report of the county treasurer for the fourth quarter of 1924. Various items are identified. The cash balance of all funds on hand at the close of the preceding quarter (September 30, 1924) was $24,689.41. Quarterly receipts increased this item to $29,640.03. Expenditures were $14,515.19 for the quarterly period, leaving a balance of $15,124.84. To this report is attached the certificate of County Judge W. R. Edwards: "By the court examined, found correct in full, and in due form of law. Said report is therefore approved and in all things confirmed by the court."

Exhibit 5, copied from Record Book "X" at page 510, is as follows: "On this fifth day of January, 1925, the county clerk and county treasurer of Benton county . . . are hereby ordered by the court to make and file with this court on or before the first Monday in February, 1925, a sworn statement of the financial condition of Benton county, as the same existed on the first day of January, 1925. Said statement to be made to show the amount of money in the treasury . . . to the credit of each fund on said day; the amount of outstanding warrants [drawn] on each fund, and the amount of unadjusted claims pending in the county court."

Receipt of the report is noted, . . . "which report is in words and figures as follows: [Balance to the credit of] county general fund, $961.12; circuit court, $2,957.01; jail, overdrawn, $329.65; county home, $860.77; justices of the peace, $1,006.21; officers' salaries, $578.98; bridges, $7,835.85 highway improvement, $414.42, total of balances, $14,614.35."

Indebtedness was: "Outstanding general revenue scrip, $13,117.75; circuit court, $1,944.18; jail, $315.31; county home, $179.95; justices of the peace, $334.57; officers' salaries, none; bridges, none; highway improvement, $337.09; total, $16,328.87."

Disregarding the jail item of $329.65 shown on the exhibit "in red," and presumably an overdraft, the excess of warrants outstanding over balances, was $1.714-

.52. The unadjusted claims are not shown in this report, but inasmuch as the court's order directed that they be determined and listed in the report, it must be presumed there were no such claims—although such presumption is no doubt erroneous.

There was this judicial finding: "Said report is by the court examined, approved, and ordered spread of record."

In Record "Z," at page 252, there appears an order "In the Matter of the Building of the New Court House." The order is exhibit 7 to the response herein, and is:

"On this 29th day of October, 1927, a day of the October term, the court makes a further investigation of the fiscal affairs of Benton county to determine whether the contract made by the commissioners with Messinger & Dalton for the building of the proposed court house should be approved, and finds from the previous assessment of real and personal property of the county, and the taxes collected therein, and the general county revenue received from all other sources, and from the amounts heretofore required to be expended for the necessary expenses in the administration of the affairs of the county, and upon a reasonable estimate of the probable receipts and expenditures necessary to administer the affairs of the county in the fiscal year beginning the second Monday in November, 1927, and the following years, from 1928 to 1947, inclusive, *that the county is now out of debt,* and that there will be annually a margin left to meet the annual payments of $10,000 for construction of the courthouse, as provided by the appropriation of $200,000 made by the quorum court of the county in December, 1926, after the indispensable governmental expenses of running the county are deducted from the total revenues to be annually levied and collected. W. R. Edwards, County Judge."

Exhibit No. 8 is a transcript of the proceedings of the quorum court, December 1, 1926. A committee had been appointed to examine the condition of the old courthouse and to make recommendations. The report recited that a suitable building could be erected . . .

"for approximately \$200,000, to be appropriated and paid in twenty annual installmants out of the five mill tax levies authorized by law to be made for general county purposes, leaving a balance thereof sufficient to take care of the general county expenses; that the county court will get out of debt from levies already made for the fiscal year 1927, and [we] earnestly recommend that a new courthouse be built."

I am unable to construe these orders, judgments, and reports, in a manner different from what their language imports.

Disregarding the order of January, 1925—which seemingly does not take into account "unadjusted claims" pending—we have before us a definite judicial finding of the county court, made in pursuance of a specific purpose (issuance of bonds), that on October 29, 1927, the county "*is now out of debt.*" Upon this judgment purchasers of courthouse bonds relied, and the bonds were sold after this solemn judgment had been rendered, from which no appeal was taken. At the expiration of six months it became final; and, in my opinion, neither Amendment No. 10 nor Act 210 was intended as a relief measure in circumstances such as we are dealing with. It is true the determination of county obligations— or, rather, a lack of obligations—was not made pursuant to Act 210, followed by publication in a newspaper. But there was no necessity for the performance of a useless task.

In *Stahl* v. *Sibeck*[4] we said:

" . . . Here the county court is attempting to set aside its previous order solemnly adjudicating the indebtedness of Pulaski county as of October 7, 1924, on the ground that the court made a mistake in the amount of the indebtedness, in the very teeth of the provisions of § 1 of the enabling act, No. 210 of 1925, p. 608. This section of the act provides that: 'The county court shall, by order entered upon its records, declare the total amount of such indebtedness.' . . . The order of the county court in 1925 found that the county was indebted

4 183 Ark. 1143, 40 S. W. 2d 442.

in the sum of $350,000. No person brought any suit to review the finding within the time limited, and it thereupon became 'conclusive of the total amount of such indebtedness, and not open to further attack,' and is *res judicata.*"

Provision in Act 210 for publication of the county court's finding of indebtedness, upon which it is proposed to predicate a bond issue, is for the benefit of taxpayers. It is difficult to understand why a judgment finding that there was no indebtedness, even though no publication in a newspaper was made, is not conclusive of the facts recited when the period for appeal has expired. Certainly no taxpayer's rights were impaired through failure of the county court to cause publication of its judgment that no indebtedness existed.

Since the circuit court, under the Constitution, has jurisdiction to entertain appeals from the county court, prohibition has been improperly granted, and the writ should be quashed.